[S. F. 22547. In Bank. Oct. 17, 1967.]

RAYMOND ZEEB, JR., Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and STANDARD OIL COMPANY OF CALIFORNIA, Respondents.

. Marcus & Bresnahan, N. Michael Rucka and Maurice S. Marcus for Petitioner.

Morgan, Beauzay, Wylie, Ferrari & Leahy and Robert T. Bledsoe as Amici Curiae on behalf of Petitioner.

Everett A. Corten and Richard Swanson for Respondents.

PETERS, J.—Petitioner sustained an industrial injury, consisting of dermatitis of the right hand. On March 31, 1965, the Industrial Accident Commission, the predecessor of respondent board, issued its award which included further medical treatment necessary to cure or relieve from the effects of the injury. The employer, respondent Standard Oil Company of California, then authorized treatment by Dr. Allington, but petitioner objected to Dr. Allington on the ground of the distance from his home to the doctor's office. Standard then designated a panel of three physicians for petitioner's consideration, and he chose Dr. Kanzel, who rendered treatment from May 4, 1965, to July 20, 1965. In October of 1965, petitioner's condition "flared up" again, but Dr. Kanzel, on the ground that the then present condition was not due to the industrial injury, refused to treat petitioner except on a private patient basis.

Petitioner then went for treatment to Dr. Lininger. He stopped seeing her because he was unable to pay her bills and sought reimbursement for the self-procured medical treatment. On March 30, 1966, he received an award reimbursing him for the self-procured medical treatment based on the theory that the "flare up" in October 1965 was connected with the original industrial injury.

Petitioner thereafter continued to obtain treatment from Dr. Lininger. On April 18, 1966, the employer notified petitioner that Dr. Kanzel had been authorized to resume rendering treatment and that further treatment by Dr. Lininger would not be authorized. Petitioner refused the offer of Dr. Kanzel's services, and filed a petition for enforcement of medical award seeking a determination that he is entitled to continue his treatment with Dr. Lininger and that Standard is required to pay the costs of the treatment. The matter was submitted on the pleadings and the board denied petitioner's claim that he was entitled to further treatment of his industrial injury by a doctor of his own choice at Standard's expense.

The issue presented is whether an employer may

resume control over the medical treatment by offering to provide it after the employer has once refused to provide medical treatment for an industrial accident, the employee has obtained private treatment by a physician and in the absence of any substantial change of condition wishes to continue his treatment with the same doctor.

The petitioner and board in their briefs discuss only this issue. The referee's decision denying petitioner relief, however, and the referee's report on rehearing, suggest that in fact no proper issue was presented for decision because the record does not affirmatively indicate that petitioner has secured any treatment since April 18, 1966, the date the employer offered to provide the services of Dr. Kanzel. The issue presented in the briefs cannot thus be avoided. Section 4604 of the Labor Code requires that controversies "between employer and employee arising under this chapter shall be determined by the appeals board, upon the request of either party." The issue briefed is a controversy and its determination cannot be avoided on the theory suggested by the referee.

On the main issue the law is by no means clear. Section 4600 of the Labor Code provides in part: "Medical, surgical, and hospital treatment . . . which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

██ Respondent relies on the statement in 2 Hanna, The Law of Employee Injuries and Workmen's Compensation (1954), page 313, where it is declared that where "the employer or carrier has lost control of treatment of an industrial injury by some action that legally justifies the employee in procuring his own treatment, control may be regained by an adequate tender." Hanna points out that early cases of the Industrial Accident Commission had taken the position that once control was lost by the employer, he could not regain it without the consent of the employee. (*Champlin* v. *Pierce* (1924) 11 I.A.C. 18; *Earl* v. *Northern Redwood Lumber Co.* (1923) 10 I.A.C. 97; *Denchy* v. *Panama-Pacific International Exposition Co.* (1914) 1 I.A.C. 109, 110.) But he gives it as his conclusion, however, that the rule had been changed by the decision of the appellate court in *O'Neill* v. *Industrial Acc. Com.*, 91 Cal.App. 121 [266 P. 866].

It is quite doubtful whether *O'Neill* should be interpreted

as broadly as is suggested by Hanna. The language of the court in that case is ambiguous and can be reasonably interpreted to mean that control, once having been lost by the employer, can only be regained without the employee's consent in limited situations, such as where the employer tenders additional treatment or if he makes a showing that the treatment should be changed and that such changed treatment has been refused by the employee.[1]

Thus the statement in *O'Neill* and the quotation from Hanna are of doubtful help to either of the parties to the present controversy. Moreover, in the light of the vacillating position of the commission, there does not appear to be any basis in this case for application of the principle that long standing administrative interpretation of a statute is entitled to great weight.

On principle, petitioner's contention that the employer had lost control to compel the acceptance of its doctor under the facts of this case, is sound. It has been declared that "The primary purpose of industrial compensation is to insure to the injured employee and those dependent upon him adequate means of subsistence while he is unable to work and also to bring about his recovery as soon as possible in order that he may be returned to the ranks of productive labor. . . . And to secure the speedy return of the workmen to productive employment it is provided that medical and surgical services shall be furnished by the employer. This liability for medical and surgical services is not, therefore, a burden placed upon the employer as a penalty for any failure of duty on his part, but is merely a part of the whole compensation due the

---

[1]The actual holding in *O'Neill* v. *Industrial Acc. Com., supra*, 91 Cal. App. 121, was that the employer did not tender medical treatment and that therefore it did not regain control. Thus the issue of whether the employer could regain control by a proper tender of treatment was not involved. Nevertheless, the court discussed the issue as follows: "It was contended upon the argument that by reason of neglect on the part of the employer and the failure to make tender by the insurance carrier of proper medical treatment until after the petitioner had secured treatment for himself, that the right of the insurance carrier now to make such tender and present to the Commission proof of what treatment should be given, is barred. We do not, however, think that this is a correct interpretation of the Compensation Act. The intent and purpose of the section to which we have referred, and also of section 9 and subdivision 'E' of section 11 would lead to the conclusion that at any time during the continuance of the injury, the insurance carrier might tender additional medical services, ask for an examination and present to the Commission the facts, if such facts exist, showing the necessity for a change in treatment or what treatment should have been given, which, if refused, would relieve the insurance carrier from liability under subdivision 'E' of section 11 if so found by the Commission." (91 Cal.App. at p. 128.)

employee as the result of his injury." (*Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33, 39-40 [210 P. 410].)

Obviously, it will ordinarily be in the interests of both the employer and the employee to secure adequate medical treatment so that the employee may recover from his injury and return to work as soon as possible. Permitting the employer to control the medical treatment permits the employer, who has the burden to provide the medical treatment, to minimize the danger of unnecessary and extravagant treatment, and in the light of the employer's interest in speedy recovery, the employer's control should rarely result in a denial of necessary treatment. ▮ Thus the two purposes underlying section 4600 of the Labor Code, effective treatment and minimization of expense, will ordinarily be served where the employer is permitted control of the medical treatment.

However, where there is a conflict between the two purposes, the purpose of securing proper medical care and speedy recovery must take precedence over the goal of minimization of cost. ▮ Section 4600 itself recognizes the right of an employee to reimbursement for self-procured medical help where the employer refuses to provide medical treatment, and the right of reimbursement exists even where the employer's refusal is made in good faith and is a reasonable determination in view of the information available to him. The employer's refusal to provide adequate and necessary medical care, whether or not in good faith, may impose a great hardship upon an employee, who due to the injury frequently is without funds to properly support himself and his family or is without funds to obtain the necessary care. It would be inequitable to require the employee before obtaining medical care to first obtain an order from the board that he is entitled to treatment.

For such reasons, many decisions have awarded an employee reimbursement for self-procured treatment where the employer has failed to render treatment on the basis of advice of its doctors that it was unnecessary or on the basis of a mistaken determination that the origin of the injury was not industrial in nature. (E.g., *McCoy* v. *Industrial Acc. Com.*, 64 Cal.2d 82, 85-91 [48 Cal.Rptr. 858, 410 P.2d 362]; *Foremost Dairies* v. *Industrial Acc. Com.*, 237 Cal.App.2d 560, 575-577 [47 Cal.Rptr. 173].)

In *McCoy*, for example, the employer in good faith refused further medical treatment, and the employee, who did not notify the employer that a private doctor had recommended

an operation, was held entitled to recover the reasonable costs of the operation. We stated that where the employer refuses further medical care, ''he has voluntarily terminated his right to control the course of medical treatment. In order to assure that he has had a meaningful opportunity to exercise that right, it is appropriate to require that there be no substantial change in the employee's condition between the time of the refusal and the treatment by the employee's own doctor and that such treatment occur within a reasonable time after the refusal. And we emphasize also that, whether the treatment is administered by a doctor chosen by the employee or one selected by the employer, the latter is liable for no more than the reasonable cost of such treatment as is reasonably required to cure or relieve from the effects of the injury.'' (*McCoy* v. *Industrial Acc. Com.*, *supra*, 64 Cal.2d at p. 89.)

In other words, considerations of expense must be either disregarded or, at most, given limited weight where there is a substantial danger that they will interfere with the employee's right to secure necessary medical treatment of injuries due to the industrial accident and to achieve speedy recovery.

Where, as in the present case, the employer has refused treatment causing the employee to procure his own medical treatment, medical considerations and adherence to the purposes of section 4600 would dictate that a doctor-patient relationship which will inspire confidence in the patient is an ingredient aiding in the success of the treatment, and that, once such a relationship has been established, treatment should continue with the same doctor in the absence of a change of condition or evidence that the treatment is defective or additional treatment is necessary. So far as appears from the record before us, petitioner is being treated by his private doctor whom he consulted after the employer's refusal to provide further necessary care, and there is no evidence that there has been a change of condition or that the treatment provided is defective or incomplete. Accordingly, there is no substantial showing which would warrant an interruption of the existing treatment or commencement of new treatment.

Petitioner is entitled to a determination that in the absence of a substantial change in condition he may continue his treatment with Dr. Lininger and will not lose his right to reimbursement by doing so. Of course, the employer will only be liable for the ''reasonable cost of such treatment as is reasonably required to cure or relieve from the effects of the

injury.'' (*McCoy* v. *Industrial Acc. Com., supra,* 64 Cal.2d 82, 89.)

The order is annulled, and the respondent board is directed to determine this controversy in accordance with the views herein expressed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.