[Civ. No. 33159. Second Dist., Div. Four. Mar. 6, 1969.]

LEON O. WHITE, Petitioner, v. WORKMEN'S COMPEN-
SATION APPEALS BOARD, CASUALTY INSUR-
ANCE COMPANY OF CALIFORNIA et al., Respond-
ents.

448

Gross, Durante & Narvid and Felix L. Durante for Petitioner.

Everett A. Corten, Gabriel L. Sipos, Parker & Dally and John F. Parker for Respondents.

FILES, P. J.—Petitioner, an injured workman, seeks review of that portion of his compensation award which denies recovery of certain items of medical-legal expense and the cost of self-procured surgery.

Petitioner, a janitor employed by a building maintenance company, sustained an injury to his back while lifting a heavy pail in the course of his employment on October 14, 1967. From October 20, 1967, to January 2, 1968, he was under the care of Dr. Femino, an orthopedic specialist furnished by the employer's insurance carrier. During this period, bed rest, heat therapy, physical therapy and exercise were prescribed. Petitioner was given therapy at the physician's office three times each week, and a lumbosacral corset was furnished to him. Dr. Femino's report of his initial examination includes this statement:

"IMPRESSION: 1. Acute sciatica, right lower extremity secondary to possible herniated L4-5 disc versus acute lumbosacral strain."

The report recommends conservative treatment and "If this does not offer sufficient relief, he should have a myelogram and any surgical treatment which would be indicated by this test."

On November 28, at the request of Dr. Femino, Dr. Golseth made an electromyographic examination and reported normal findings.

Dr. Femino examined petitioner several times during the period of treatment, and each of his reports notes some progress, though petitioner was not free from pain. On January 2. 1968, Dr. Femino examined petitioner and found there had been a loss of pain in the right leg, but that pain contin-

ued to be experienced in the low back. He prescribed a back brace and instructed petitioner to return to work on January 8. Dr. Femino's report of that examination includes this:

"It is difficult to prognosticate his future at this time. I would like to see how he responds to returning to his former employment with the use of the brace. If it flares-up his leg pain, I feel that he will have two alternatives. One, either to seek lighter employment or two, consider surgical treatment of the lumbosacral spine.

"He was given a return appointment for one month for re-evaluation."

After leaving Dr. Femino's office on January 2, petitioner attempted to find his foreman to talk about returning to work. While doing this he experienced severe pain in his lower back and right leg. He called his own attorney, who referred him to Dr. Jones. Petitioner then was taken to the office of Dr. Jones, arriving there about 3:30 p.m. The following morning petitioner was admitted to Bel Air Memorial Hospital under Dr. Jones' care, where a number of examinations and tests were made.

On Friday, January 5, 1968, petitioner's attorneys wrote a letter to the insurance carrier's attorneys as follows:[1]

"Because of defendant's failure to furnish diligent treatment and/or effective medical treatment, Mr. White was hospitalized on a self-procured basis by Dr. R. Fleming Jones of the Hollywood Medical Clinic for treatment to relieve him from the worsening residuals of his industrial injury, and such self-procured treatment and hospitalization will continue until the applicant is furnished with effective medical care."

On the following Friday, January 12, Dr. Stewart performed surgery. When operative exploration showed a ruptured lumbar disc, a laminectomy and spinal fusion were performed.

After a hearing held before a referee on February 29, 1968, applicant was awarded temporary disability indemnity and certain medical-legal costs only. Liens were allowed against

---

[1]The brief of the appeals board points out that this letter is not a part of the record, though a copy of it is attached to the petition in this court as Exhibit F. The reporter's transcript of the proceedings before the referee shows the letter was discussed there, and counsel stipulated that it had been received by the carrier's attorneys on Monday, January 8. The referee apparently assumed the letter was in evidence, as he commented on it in his decision. We therefore treat the copy of the letter which is attached to the petition as an augmentation of the record in this proceeding.

petitioner for the expenses incurred in connection with the self-procured hospitalization and surgery, aggregating more than $5,000, but petitioner was denied any recovery against the carrier for these expenses. The appeals board denied petitioner's application for reconsideration.

 *Reimbursement for Self-procured Treatment*

Labor Code section 4600 provides in pertinent part: "Medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

The factual issue to be determined by the referee, and by the appeals board, was whether or not the evidence showed a "neglect or refusal seasonably to" provide the treatment "which is reasonably required to cure or relieve from the effects of the injury."

 The cases construing section 4600 have established that an employer's failure over a period of time to provide effective treatment may constitute a refusal. To justify an award for self-procured treatment it is not necessary to show an express refusal, or a complete refusal.

In *McCoy* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 82 [48 Cal.Rptr. 858, 410 P.2d 362], the record showed an express refusal, based upon the employer's contention that the employee no longer needed treatment. There the commission refused to allow the cost of self-procured treatment upon the ground that the employer was not given reasonable notice or opportunity to furnish surgery after the employee concluded that surgery was necessary. In reversing the commission, the Supreme Court summarized the law thus (at pp. 87-88): "Even if the employer has assumed his responsibility to undertake treatment, various circumstances have been held to justify the employee in thereafter obtaining care from his own doctor at the employer's expense. Many decisions have awarded an employee reimbursement for self-procured treatment when the employer has either refused to render further treatment on the advice of his doctors that it was unnecessary or the care supplied by the employer proved ineffective, and the employee's own doctor afforded such treatment as was reasonably required to cure or relieve him. [Citations.]

"Emanating from the foregoing cases is the rule that the employer is required to provide treatment which is reasonably necessary to cure or relieve the employee's distress, and if he neglects or refuses to do so, he must reimburse the employee for his expenses in obtaining such treatment. None of the cited cases involved an emergency or a finding that a further request for care would have been futile. Moreover, none required the employee, after the employer's initial neglect or refusal, to afford him an additional opportunity to render treatment on the basis of subsequent recommendations made by the employee's own doctor, although a few of the cases on their facts involved a situation in which the employer knew, before his default, that the employee's own physician recommended certain treatment. . . ."

Furthermore, it is the rule that "the right of reimbursement exists even where the employer's refusal is made in good faith and is a reasonable determination in view of the information available to him." (*Zeeb* v. *Workmen's Comp. Appeals Board* (1967) 67 Cal.2d 496, 501 [62 Cal.Rptr. 753, 432 P.2d 361].)

If the self-procured treatment proves successful, the employee has the benefit of hindsight in proving that treatment furnished was inadequate. *Industrial Indem. Co.* v. *Industrial Acc. Com.* (1961) 188 Cal.App.2d 656 [10 Cal. Rptr. 566] provides an example of this. The employee in that case sustained a back injury, for which the employer provided treatment for a time. None of the doctors diagnosed a disc injury. When the employee asked the commission to compel further treatment his claim was denied. Thereafter the employee consulted another physician, who diagnosed a herniated disc, performed surgery, found the protrusion and removed it. Upon this new information the case was reopened. An order reimbursing the employee for the cost of the self-procured treatment was affirmed by the court.[2]

Likewise in *County of Los Angeles* v. *Industrial Acc. Com.* (1936) 13 Cal.App.2d 69 [56 P.2d 577], the employee became dissatisfied with the treatment furnished, went to a physician of her choice and obtained a successful result. In affirming the award for the cost of the self-procured treatment the court

---

[2]That case also contains language (at p. 660) indicating that reimbursement for self-procured treatment is dependent upon a showing of prior notice to the employer or a finding that notice would be futile. That part of the decision must now be read in the light of the later decision in *McCoy* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 82, 87-88 [48 Cal. Rptr. 858, 410 P.2d 362], quoted above.

said (at p. 74) : "The test of the employee's right to seek private treatment seems to be that if the treatment supplied by the employer does not within a reasonable time effect a cure, and the employee thereafter obtains different treatment from his own physician which does seasonably benefit or cure him, he has established the inadequacy of the treatment previously tendered by the employer, and where the services furnished by the employer were inadequate or inefficient the employee is justified in changing to his or her own physician, for whose services the employer is liable.''

In the case here under review Dr. Stewart was the only medical witness who furnished evidence based upon what was learned through surgery. Dr. Stewart's opinion was that reports of Dr. Femino's examination clearly indicated a ruptured lumbar disc, the tests at the hospital confirmed it and the surgery disclosed it. Dr. Stewart said surgery was indicated by the failure of other forms of treatment, and that the result was excellent. The only report made after the surgery and placed in evidence by the carrier was a report of Dr. Femino summarizing the reasons why he believed on January 2, 1968, prior to surgery, that there was no need for anything other than continuance of the conservative regimen. That opinion supports a finding of good faith, but it does not rebut the opinion of Dr. Stewart, based upon surgical exploration, that there was a ruptured disc which needed to be removed and an unstable spine which required fusion. On this critical issue Dr. Stewart's testimony stands uncontradicted.

The ''Opinion on Decision'' filed by the referee and his subsequent report to the appeals board on petition for reconsideration state that the claim for self-procured medical costs was denied upon the ground that the time between the attorneys' letter and the surgery was not a reasonable period of notice to the carrier, there being no showing of emergency. The appeals board expressly based its decision upon the reasons stated by the referee. It is thus apparent that the decision rests upon an untenable ground. Lack of notice to the employer or carrier is not necessarily a bar to relief, as the *McCoy* opinion points out.

### Medical-Legal Costs

The record shows that on October 20, 1967, the carrier assumed responsibility for medical care. On October 30 an application for adjudication of claim was filed by petitioner; accompanied by a letter from petitioner's attorney requesting

that the case be put off calendar, "since it appears that the defendants will furnish all benefits." On November 10 petitioner was examined by Dr. Polesky and on November 16 by Dr. Penka, both chosen by him. The charges of these physicians for these examinations (totaling $135) petitioner sought to recover from the carrier as "expenses to prove a contested claim." The referee found against him and the board denied reconsideration.

Labor Code section 4600 provides that the employee ". . . shall be reimbursed for expenses reasonably, actually, and necessarily incurred for X-rays, laboratory fees, medical reports, and medical testimony to prove a contested claim. The reasonableness of and necessity for incurring such expenses to prove a contested claim shall be determined with respect to the time when such expenses were actually incurred."

At the time these expenses were incurred no issue was pending. Inasmuch as the carrier was providing medical care, and no dispute appears to have arisen at that time over the adequacy of the treatment, it was not unreasonable for the referee to infer that those examinations were not obtained "to prove a contested claim." The decision being based upon an inference reasonably drawn by the referee and the board, it is not subject to reversal here.

That portion of the award which denies reimbursement for self-procured treatment is reversed and the case is returned to the board for further proceedings. In other respects the award is affirmed.

Jefferson, J., and Wapner, J. pro tem.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 30, 1969.

---

*Assigned by the Chairman of the Judicial Council.