126 N.J. Super. 246 (1973)
313 A.2d 811
HOSPITAL SERVICE PLAN OF N.J. ET AL., PLAINTIFFS,
v.
MARY JANE AND LOUIS PHILLIPS, DEFENDANTS.
Superior Court of New Jersey, District Court, Middlesex County.
Decided December 13, 1973.
*248 Ms. Phyllis J. Kessler for plaintiffs (Messrs. Pitney, Hardin and Kipp, attorneys).
Mr. John L. Maddalena for defendants (Messrs. Mezzacca, Guida and Maddalena, attorneys).
COHEN, J.C.C., Temporarily Assigned.
The plaintiffs, Blue Cross and Blue Shield, made payments for hospital and surgical services which, they now assert, were within the workmen's compensation exclusions of their contracts. They brought this action against their subscriber and his injured dependent for the amount of the payments. The matter is here on plaintiffs' motion for summary judgment.
The exclusionary language in the two contracts is essentially the same. The quoted clause is from the Blue Cross contract, and the only differing language in the Blue Shield contract is placed in brackets:
The Plan shall not be liable for: * * * Hospital services rendered for [services resulting from] any * * * accidental injury arising out of and in the course of employment for which benefits and/or compensation are available in whole or in part under the provisions of any Workmen's Compensation Law, * * * whether or not the covered person claims compensation or received benefits for * * * services thereunder. * * *
Defendant Mary Jane Phillips was injured on October 10, 1967 while employed by Fedders Corporation. Her accident arose out of and in the course of her employment. Her employer provided medical treatment for a substantial period of time. She was paid temporary disability by her employer's workmen's compensation carrier.
In April 1970, apparently dissatisfied with her progress and her treatment, Mrs. Phillips consulted Dr. Weisenfeld. The record does not disclose whether she made a demand upon her employer for further treatment. She did, however, receive from her employer's carrier a prompt and timely notice that it would consider as "unauthorized," under R.S. *249 34:15-15, any treatment by Dr. Weisenfeld. She nevertheless decided to go ahead. According to her testimony in the Division of Workmen's Compensation, her own attorney at that time told Mrs. Phillips the treatment was unauthorized.
Dr. Weisenfeld performed exploratory surgery in the lumbar and sacral spine and fused the fifth lumbar and first sacral vertebrae. The apparently eligible bills were $2691.10 and plaintiffs paid them in the ordinary course of business. In July 1970 Blue Cross ascertained that Mrs. Phillips had filed a workmen's compensation petition and soon gave notice to the Division and the employer's carrier of its claim for the hospital charges. R.S. 34:15-15.1.
In August 1972 Mrs. Phillips' petition came before the judge of compensation for resolution. It is apparent from the judge's remarks that the matter had been the subject of numerous fruitless prior conferences. It is equally clear that the surgery, performed three years after the accident and without authorization, was a major stumbling block to earlier resolution. The parties proposed a settlement for approval pursuant to N.J.S.A. 34:15-58. They proposed that Mrs. Phillips be paid for 17 1/2% of partial total permanent disability and that the 1970 surgery and hospitalization be held unauthorized and thus not reimbursable by the carrier to Blue Cross or to Mrs. Phillips. In her testimony in the Division Mrs. Phillips said she understood that it would be her responsibility to pay all bills for unauthorized treatment.
The judge of compensaton entered an order approving the settlement. That order had the same effect as a judgment resolving the issues raised in the petition. He found the disability resulting from the compensable injury to have been "post-operative residuals exploritories [sic] L4-L5, L5-S1 and fusion L5-S1 and post-traumatic neurosis."
The judge of compensation ruled that the surgery and hospitalization were unauthorized. Thus, the residual effects of the surgery were held to have resulted from the compensable injury, but the cost of the surgery and hospitalization was held not to be the employer's responsibility.
*250 Plaintiffs' contract language has an informative history. Earlier contracts issued by plaintiffs excluded payment for hospital and surgical services which "are in whole or part compensable under any State * * * workmen's compensation law * * *." The Supreme Court dealt with that language in a case factually very like this one. Hunt v. Hospital Service Plan of N.J., 33 N.J. 98 (1960). The court held that hospital expenses ruled unauthorized and thus not recoverable in the Division were not "compensable" and therefore not excluded from the Blue Cross and Blue Shield Contracts. The contract language, according to the court, barred double recovery by an injured workman. If the intent was to bar payment for any services necessitated by work-connected injuries, whether or not reimbursed, the court said, Blue Cross and Blue Shield could have chosen "appropriate unambiguous words to accomplish the result." 33 N.J. at 106.
The contract language before me is plaintiffs' response to Hunt. In it plaintiffs seek to exclude payment for any services rendered for or resulting from a work-connected injury, whether or not the cost of the services is paid by the employer or is the subject of a workmen's compensation petition, and whether or not the Division rules the particular expense not recoverable for some statutory reason.
Plaintiffs chose language that focuses on the work-connection of the injury itself and not on the "compensability" or reimbursability of the particular expense incurred. Their purpose is evident. They wish to avoid giving the injured employee an easy choice between authorized treatment, for which the employer pays, and unauthorized treatment, for which plaintiffs would be liable under Hunt. (An injured employee whose employer refuses to authorize necessary medical care has an adequate remedy in the Division. R.S. 34: 15-15.1. Benson v. Coca Cola Co., 120 N.J. Super. 60 (App. Div. 1972)). Such a choice would permit the employee to shift the medical cost of a work-connected injury from the employer to plaintiffs.
*251 Plaintiffs also wish to avoid providing the parties, in an otherwise insoluble dispute in the Division, the easy solution of stipulating away Blue Cross notices of claim, thereby relieving the employee of a substantial expense and the employer of a large area of cost liability. Plaintiffs are, as a practical matter, unable to protect their interests in the Division. See Bielak v. Counties Contracting and Const. Co., 95 N.J. Super. 266 (Law Div. 1966).
The language plaintiffs chose expresses their goals clearly and unambiguously. To hold otherwise would be to distort the words out of their obvious meaning. There may be a cost of permitting plaintiffs to attain their goals. Their current language opens a previously non existent gap between "compensable" expenses and work-injury-connected expenses. It leaves the injured party to absorb, without coverage, all work-connected but uncompensated medical expenses. The gap, however, is not created by the contractual language standing alone, but only as it interacts with the workmen's compensation statute and the practices of parties before the Division. Plaintiffs are not obliged to cure every potential injustice created by this complex of influences.
On balance, I cannot say that the clear words used by plaintiffs are either unconscionable or so divergent from the parties' legitimate expectations as to require judicial nonrecognition. Plaintiffs are not required to cover all medical expenses not otherwise reimbursed.
Where, as here, Blue Cross and Blue Shield claim protection of their workmen's compensation exclusion, the sole question for decision is whether the medical services were rendered for or resulted from a work-connected injury for which statutory workmen's compensation benefits are available in whole or part. Whether a Division ruling, that a medical service is causally unconnected with a compensable injury, binds plaintiffs in this court is a question not now before me. No such ruling was made. A Division ruling that a medical service was not authorized is not binding *252 here because it is irrelevant to the test created by the contractual language.
"Unauthorized" medical expenses are not simply those which an employer has refused to supply or pay for. An employer is liable for all medical services it actually authorized and also for all necessary services it refused to authorize, after request. N.J.S.A. 34:15-15. The ruling of the judge of compensation that Fedders did not have to pay Mrs. Phillips' expenses necessarily implied findings both that the services were not authorized and that they were not requested or not necessary. These implicit findings were made with the parties' consent and without any testimony whether Mrs. Phillips made the required demands, whether Fedders made an offer of adequate alternative treatment, or whether postoperative diagnosis justified the surgery. See Benson v. Coca Cola Co., 120 N.J. Super. 60 (App. Div. 1972). They were made also alongside findings that the disability resulting from the compensable accident were the postoperative residuals of the surgery.
There is no dispute, on the record before me, that the services were rendered for and resulted from an injury for which workmen's compensation was available, in whole or part. Compensation was ordered by the Division and paid. The gist of Mrs. Phillips' testimony was that the surgery and hospitalization resulted from the injury. Her expert, Dr. Novich, was to the same effect. He testified that the post-operative residuals were causally related to the accident and its aggravation of a congenital condition. The judge of compensation made findings consonant with Dr. Novich's opinion. The question does not arise whether Mrs. Phillips could reverse her field and here attack those findings, made, as they were, at her instance. She has not done so. She has submitted nothing factually different on this motion.
There is no genuine issue as to any material fact. Plaintiffs are entitled to judgment as a matter of law.
It is conceivable that the limited testimony before the Division and its resultant findings and the settlement it approved *253 arose out of mistake by Mrs. Phillips as to the consequences. I cannot say whether the Division would entertain an application to reopen its judgment on that basis. I have no power to remand this matter there. I would, however, entertain a motion to stay my judgment in the event any such application should be made to the Division.